**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

DAVID G. CHIRINO,                              :
                                                 :
                      Plaintiff,             :
                                                 :
v.                                             :    Civil Action No. 1:24-cv-85
                                               :
YARDI SYSTEMS, INC.                 :
d/b/a RENTGROW, INC.,             :
                                               :
                      Defendant.        :
_____ :

## COMPLAINT

       Plaintiff David G. Chirino states as follows for his Complaint against Defendant Yardi Systems, Inc. d/b/a RentGrow, Inc. ("RentGrow").  In support of his Complaint, Plaintiff alleges as follows:

## INTRODUCTION

       1.     Through its enactment of the Fair Credit Reporting Act (the "FCRA"), Congress remarked that consumer reporting agencies "have assumed a vital role in assembling and evaluating . . . information on consumers," which requires that they "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3)-(4).  To accomplish Congress' goals, the FCRA contains several requirements to protect consumers.

       2.     For example, whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, yet often disregarded, standard on credit reporting agencies. *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking

down the requirements of § 1681e(b) and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993))). Additionally, § 1681i requires that consumer reporting agencies conduct reasonable investigations within 30 days of their receipt of consumer disputes.

3.       Here, RentGrow violated those cornerstone provisions when it: (i) provided Plaintiff's prospective landlord with a grossly inaccurate report that identified a loan and civil judgment that did not belong to Plaintiff; and (ii) failed to correct its reporting following several disputes from Plaintiff.

4.       The inaccurate items on Plaintiff's consumer report belonged to another person who shared the same first and last names—presumptively his father. RentGrow  could  have easily prevented that reporting  and the  resulting  harm  in several ways. For example, RentGrow could have required a full name match—including middle name. RentGrow also could have matched Plaintiff's date of birth and his social security number.  RentGrow, however, did nothing beyond matching first and last names.

5.       Accordingly, Plaintiff alleges claims against RentGrow for: (i) failing to reasonably ensure the maximum possible accuracy of Plaintiff's consumer report in violation of the FCRA, 15 U.S.C. §1681e(b); and (ii) failing to fulfill its reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

## JURISDICTION

6.       The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7.       Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this District and Division, where Plaintiff resides.

## PARTIES

8.　　Plaintiff is a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

9.　　Defendant RentGrow, Inc. is a company headquartered in Waltham, Massachusetts. RentGrow does business throughout the United States, including in Virginia. RentGrow is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f). For monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the internet, to prepare and furnish such consumer reports. Specifically, RentGrow sells consumer reports, also called tenant screening reports or background checks, to landlords and property owners for their use in deciding whether to approve applications for housing.

## FACTUAL ALLEGATIONS

10.　　In September 2022, Plaintiff applied for housing at an apartment complex in Herndon, Virginia, but his application was denied.

11.　　Plaintiff eventually discovered that the property owner had procured a tenant screening report that was prepared by RentGrow.

12.　　That report identified a civil judgment that was purportedly entered against Plaintiff in the General District Court of Fairfax County in 2017.

13.　　That item was inaccurate.

14.　　Upon information and belief, the civil judgment belonged to Plaintiff's father, who shares the same first and last name with Plaintiff—but not the same middle name.

15.　　Upon information and belief, RentGrow included the civil judgment in Plaintiff's consumer report because Plaintiff's first and last names matched his father's first and last names.

3

16.     Upon information and belief, RentGrow did not match any other information, such as date of birth, address, or social security number.

17.     The property owner ultimately denied Plaintiff's application because "Severe level of Judgments/Suits OR Repossession OR Voluntary Surrender."

18.     In other words, the inaccurate information listed in RentGrow's tenant screening report was identified as a precise reason for the denied application.

19.     Hoping to clear his name before it further impacted his ability to obtain housing, Plaintiff disputed RentGrow's reporting via written letter in April 2023.

20.     Plaintiff both mailed and emailed that dispute letter to RentGrow. The letter made clear that the civil judgment did not belong to Plaintiff.

21.     Plaintiff explained that RentGrow was likely mixing Plaintiff's information with his father's information.

22.     Plaintiff's letter requested that RentGrow remove the civil judgment from his consumer report.

23.     In early May 2023, RentGrow responded to Plaintiff's April 2023 dispute letter via email.

24.     RentGrow claimed incorrectly that the disputed civil information (*i.e.*, the civil judgment) was not included in the tenant screening report pertaining to Plaintiff.

25.     That was incorrect.

26.     Plaintiff sent a follow-up dispute letter to RentGrow in July 2023, again making clear that the civil judgment did not belong to him.

27.     As before, Plaintiff explained that RentGrow likely had included Plaintiff's father's information in Plaintiff's consumer report.

28.     RentGrow neglected to respond to that dispute letter.

29.     Upon information and belief, the inaccurate information remains on Plaintiff's consumer report.

### *RentGrow's Willfulness.*

30.     RentGrow has had substantial notice and knowledge of its "mixed file" problem.

31.     As early as 1992, the Attorneys General of eighteen states were forced to file a lawsuit against consumer reporting agencies because of their conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the attorneys general relating to the consumer reporting agencies' responsibilities to prevent mixed files.

32.     More recently, the Consumer Financial Protection Bureau ("CFPB") issued an advisory opinion  that reminded consumer reporting agencies like RentGrow that "name-only matching is not a procedure that assures maximum possible accuracy, and thus, consumer reporting agencies that use name-only matching violate FCRA section 607(b)." Rohit Chopra, CFPB Advisory Opinion, *Fair Credit Reporting; Name-Only Matching Procedures* at 14 (November 3, 2021), *available at* https://files.consumerfinance.gov/f/documents/cfpb_name-only-matching_advisory-opinion_2021-11.pdf.

33.     RentGrow has also been on notice that it had previously confused consumer reports with the consumer reports of others—as happened between Plaintiff and his father. To be sure, RentGrow has been sued on this issue on multiple occasions in just the past few years. *See, e.g.*, *Hudon v. RentGrow, Inc.*, No. 1:20-cv-2261, ECF No. 1 (N.D. Ga. May 27, 2020); *Fernandez v. RentGrow, Inc.*, No. 1:19-cv-1190, ECF No. 1 (D. Md. Apr. 23, 2019). RentGrow's "mixed file" problem also has been discussed by *The New York Times*. *See* Lauren Kirchner and Matthew Goldstein, *How Automated Background Checks Freeze Out Renters*, N.Y Times (May 28, 2020) (discussing RentGrow and how its "matching algorithms treat Hispanic names just like a mix-and-

match"), *available at* https://www.nytimes.com/2020/05/28/business/renters-background-checks.html.

34.     Yet despite its notice, Rentgrow knowingly chooses to ignore its mixed file problem and continues to match consumers based on first and last name matches only. It does so even though it possesses simple, easy, and inexpensive means to correct and avoid the problem.

35.     Indeed, RentGrow could and should require full name matches—including middle name or initial—before reporting information. RentGrow also could and should match dates of birth and social security numbers.

36.     RentGrow has also been put on notice that public records information is, in any event, generally unreliable. *See, e.g.*, *FTC v. TransUnion Rental Screening Solutions*, No. 1:23-cv-2659 (D. Col.); *Thomas v. Equifax Information Services, LLC,* No. 3:18-cv-684 (E.D. Va.); *Clark v. Experian Info. Sols. Inc.*, No. 3:16-cv-32 (E.D. Va.); *Brown v. Experian Info. Sols. Inc.*, No. 3:16-cv-670 (E.D. Va.). *See generally* TransUnion, *The Top 5 Risks of Online Public Records Screening*, https://hires.shareable.com/blog/what-you-dont-know-about-online-public-records (Oct. 6, 2023) ("Online public records are notoriously unreliable. Like a lot of the Internet, online public records are like the wild west.").

37.     Yet RentGrow has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

38.     Upon information and belief, RentGrow has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

39.     Accordingly, RentGrow's violation of 15 U.S.C. § 1681e(b) was willful, and RentGrow is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

40.     Compounding this problem, RentGrow also—as a standard practice—refuses to conduct independent investigations in response to consumer disputes about public records.

41.     RentGrow does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

42.     Instead, RentGrow's efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately.

43.     Accordingly, RentGrow's violation of 15 U.S.C. § 1681i was willful, and RentGrow is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

44.     RentGrow's willful conduct is further reflected by the following:

(a)     The FCRA was enacted in 1970; RentGrow has had nearly many years to become compliant;

(b)     RentGrow is a corporation with access to legal advice through its own general counsel's office and outside employment counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

(c)     RentGrow knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

(d)     RentGrow voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

(e)     RentGrow's violations of the FCRA were repeated and systematic.

45.     RentGrow's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. RentGrow's conduct was intentionally accomplished

through its intended procedures; these procedures have continued even though other consumer reporting agencies have faced court decisions and consumer complaints critical of similar conduct; and RentGrow will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

### COUNT ONE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
### (RENTGROW)

46.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

47.     RentGrow violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit file that it published and maintained.

48.     As a result of RentGrow's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: inability to obtain housing, damage to reputation, embarrassment, humiliation, and other emotional distress.

49.     RentGrow's conduct in violating § 1681e(b) was willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, RentGrow was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

### COUNT TWO:
### VIOLATION OF FCRA, 15 U.S.C. § 1681i
### (RENTGROW)

50.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

51.     RentGrow violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information

8

was inaccurate and delete the inaccurate information from Plaintiff's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (3) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in violation of §1681i(a)(5)(A).

52.    As a result of RentGrow's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: inability to obtain housing, damage to reputation, embarrassment, humiliation, and other emotional distress.

53.    RentGrow's conduct in violating § 1681i was willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, RentGrow negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff moves for actual and punitive damages, as well as his attorneys' fees and costs against RentGrow; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**DAVID G. CHIRINO**

By:_____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB # 93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030

(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*